1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8
9

DESHA CARTER,                              CASE NO. 1:07-cv-01736-SMS PC

10                    Plaintiff,           ORDER DENYING IN PART AND
                                           GRANTING IN PART DEFENDANTS'
11        v.                               MOTION FOR SUMMARY JUDGMENT

12   MUNOZ,  et al.,                       (Docs. 43, 51)

13                    Defendants.

14   _____/

15

16

## Order on Defendants' Motion for Summary Judgment

### I.    Procedural History

17
18         Plaintiff Desha M. Carter ("Plaintiff") is a state prisoner proceeding pro se and in forma

pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on
19
November 30, 2007.  The Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A,
20
and found that it states cognizable claims against Defendants Munoz, Paz, Parra, and Silva for
21
violation of the Eighth Amendment arising from the conditions Plaintiff was subjected to in the
22
management cell, against Defendant Munoz for violation of the Due Process Clause arising from
23
Plaintiff's placement in the management cell, and against Defendant Munoz for retaliation in
24
violation of the First Amendment.[1]  Fed. R. Civ. P. 8(a); *Erickson v. Pardus*, 127 S. Ct. 2197,
25
2200 (2007); *Alvarez v. Hill*, 518 F.3d 1152, 1157-58 (9th Cir. 2008).  On November 9, 2009,
26

27
[1] In a Findings and Recommendations, the Court recommended Plaintiff's Eighth Amendment claim arising
out of denial of outdoor exercise, Plaintiff's due process claim against Defendant Roberson, and Plaintiff's equal
28   protection claims be dismissed for failure to state a claim upon which relief may be granted.

1  Defendants filed a motion for summary judgment on all cognizable claims. (Doc. 43.) Plaintiff

2  filed his opposition on December 7, 2009. (Doc. 49.) Defendants filed a motion for a twenty day

3  extension of time to file their reply brief in support of their motion for summary judgment which

4  is hereby granted nunc pro tunc. (Doc. 51.) Defendants filed their reply on January 8, 2010.

5  (Doc. 52.) The motion is deemed submitted.

6  **II.    Summary Judgment Standard**

7        Summary judgment is appropriate when it is demonstrated that there exists no genuine

8  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

9  Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> 10    [A]lways bears the initial responsibility of informing the district
>       court of the basis for its motion, and identifying those portions of
> 11    "the pleadings, depositions, answers to interrogatories, and
>       admissions on file, together with the affidavits, if any," which it
> 12    believes demonstrate the absence of a genuine issue of material
>       fact.

13 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the

14 burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

15 in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

16 file.'" *Id*. Indeed, summary judgment should be entered, after adequate time for discovery and

17 upon motion, against a party who fails to make a showing sufficient to establish the existence of

18 an element essential to that party's case, and on which that party will bear the burden of proof at

19 trial. *Id.* at 322. "[A] complete failure of proof concerning an essential element of the

20 nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a

21 circumstance, summary judgment should be granted, "so long as whatever is before the district

22 court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

23 satisfied." *Id.* at 323.

24        If the moving party meets its initial responsibility, the burden then shifts to the opposing

25 party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec.*

26 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the

27 existence of this factual dispute, the opposing party may not rely upon the denials of its

28

pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P.

56(e); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

contention is material, i.e., a fact that might affect the outcome of the suit under the governing

law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific

Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e.,

the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool

v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

The parties bear the burden of supporting their motions and oppositions with the papers

they wish the Court to consider and/or by specifically referencing any other portions of the record

they wish the Court to consider.  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026,

1031 (9th Cir. 2001).  The Court will not undertake to mine the record for triable issues of fact.

*Id.*

## III.   **Chronology of Events**

The events at issue in this action allegedly occurred at California Substance Abuse

Treatment Facility and State Prison ("SATF") in Corcoran, California.  The parties' presentation

of the events in their moving and opposing papers do not portray a clear and accurate

presentation of the events reflected in the evidence submitted.  Thus, based on the evidence

submitted, and for clarity sake, the events at issue in this case have been placed in chronological

order.

12/01/06        – Plaintiff is housed in Ad-Seg because he had been recently transferred to SATF.

                (Doc. 49, Plntf. Opp., p. 2.)

                – Defendant Munoz informed Plaintiff of the compaction order and informed

                Plaintiff that he would be assigned a cellmate.  (Doc. 44, Def. UF 1.)

                – Plaintiff told Defendant Munoz that, because he was new at SATF, he did not

                know anyone with whom he would be compatible, and that he would not accept a

                cellmate.  (Doc. 44, Def. UF 2.)

                – Defendant Munoz informed Plaintiff that if he did not accept a "cellie," he

3

1    would be placed on management status.  (Doc. 49, Plntf. Exh. C, p. 27; Doc. 44-2,

2    Def. Exh. A, Plntf Dep., 23:12-24:6.)

3            – Plaintiff wrote up an inmate appeal against Defendant Munoz for trying to force

4    him into accepting a cellmate with whom Plaintiff was not compatible and because

5    Defendant Munoz said he did not know anything about Plaintiff going through validation

6    for gang association that Plaintiff would have to find a cellmate because Defendant

7    Munoz was trying to comply with compaction orders due to limited space.  (Doc. 44-2,

8    Def. Exh. A, Plntf Dep., 18:24-24:17.)

9

10   12/02/06     – Plaintiff was taken to a holding cell to talk with another inmate to see if they

11              were compatible, but they quickly knew that they were not compatible and so

12              advised Defendant Munoz.  (Doc. 44, Def. UF 4-6.)

13              – Defendant Munoz got irate and flustered that Plaintiff would not agree to room

14              with the other inmate.  (Doc. 44-2, Def. Exh. A, Plntf Dep., 24:12-25:1.)

15              – Plaintiff gave Defendant Munoz his inmate appeal because Defendant Munoz

16              called him to talk with another inmate about being cellmates despite their

17              conversation the day before.  (Doc. 44-2, Def. Exh. A, Plntf Dep., 20:17-22:9.)

18              – Defendant Munoz read Plaintiff's inmate appeal and got angry again and

19              retorted that Plaintiff was not the only one who could file paperwork.  Defendant

20              Munoz then asked Plaintiff if he was refusing to take a cellmate, but Plaintiff

21              responded that he was not refusing a cellmate, he was refusing to accept a gang

22              member for a cellmate.  Defendant Munoz then called other officers, including

23              Defendant Paz, to take Plaintiff's belongings.  Plaintiff then said that he would

24              share a cell with the other inmate, but that Plaintiff would not sign a compatibility

25              form because he knew they were not compatible and did not want trouble.  (Doc.

26              44-2, Def. Exh. A, Plntf Dep., 25:1-26:5; Doc. 49, Plntf. Opp., 3:14-17.)

27              – Defendant Munoz had Plaintiff moved to cell 117 and put him on management

28              status wearing nothing but his boxers without any of his property, including his

4

regular mattress (being given instead a makeshift mattress composed of cotton and gauze).  (Doc. 44, Def. UF  4-8, & 10; Doc. 44-2, Def. Exh. A, Plntf Dep., 28:8-32:17 and 69:10-20.)

12/03/06     – Captain Diaz came into the building and Plaintiff spoke with him about the mattress.  Captain Diaz instructed C.O. Turner to remove the cotton & gauze and to give Plaintiff a real mattress.  (Doc. 44-2, Def. Exh. A, Plntf Dep., 69:10-70:15; Doc. 49, Plntf Exh. F, p. 38.)

12/06/02     – Plaintiff had received a real mattress by this date.  (Doc. 44-2, Def. Exh. A, Plntf Dep., 70:17-19.)

12/12/06     – Apparently Plaintiff was taken off management status this date as the Operating Procedures say management status is to last for ten (10) days.  (Doc. 44-2, Def. Exh. B, p. 33.)  Defendants argue "Plaintiff was released from management status after ten (10) days," but do not submit any evidence to directly support that assertion.  (Doc. 43, MTD, 7:16.)  Plaintiff does not allege nor argue that he was left on management status for longer than ten days.

12/13/06     – Defendant Munoz filed a RVR against Plaintiff for not accepting a cellmate. (Doc. 44-2, Def. Exh. B, p. 48.)

12/14/06     – Plaintiff was placed on ten day bedding restriction and his mattress was confiscated.  (Doc. 44, Def. UF 11; Doc. 44-2, Def. Exh. F, p. 56.)

12/24/06     – Plaintiff's bedding restriction ended.  (Doc. 44, Def. UF 11; Doc. 44-2, Def. Exh. F, p. 56.)

1 | 12/25/06          – Plaintiff filed a request for a mattress.  (Doc. 44, Def. UF 19.)  Plaintiff was

2                     denied a mattress because he refused to sign a trust withdrawal form.  (Doc. 44-3,

3                     Def. Exh. H, p. 5, ¶ "Describe Problem.")

4

5 | 12/26/06          – Plaintiff received a mattress despite not signing a trust account withdrawal form.

6                     (Doc. 44-3, Def. Exh. H, p. 5; Doc. 44-3, Def. Exh. H, p. 5, ¶ "Informal Level,

7                     Staff Response.")

8

9 | 1/12/07           – The hearing was held on the RVR filed by Defendant Munoz.  (Doc. 44-2, Def.

10                    Exh. E, pp. 48-53.)

11

12 | 1/31/07          – Upon review the RVR Defendant Munoz issued was voided.  (Doc. 44-2, Def.

13                    Exh. E, p. 54 & Doc. 49, Plntf. Exh. M, p. 47.)

**IV.    Due Process**

**A.    Plaintiff's Claim**

Plaintiff alleges that Defendant Munoz failed to follow proper procedure because he failed to issue a Rules Violation Report ("RVR") and allow a hearing officer to make findings before placing Plaintiff in cell 117 on management status.  (Doc. 1, Compl.)

**B.    Analysis**

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Ordinarily, courts look first to whether the inmate has demonstrated the deprivation of a protected liberty interest before inquiring into whether the procedural protections required under federal law were provided.  Liberty interests may arise from the Due Process Clause itself or from state law.  *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983).  Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  *Sandin v. Conner*, 515 U.S. 472, 481-84 (1995).  Such interests are limited to freedom from restraint which

6

1    "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

2    prison life." *Id*. at 484.

3          Defendants admit that Plaintiff has a valid interest in staying off management status.

4    (Doc. 43, MTD, 6:21-22.)  However, in their reply, Defendants argue that being without a

5    mattress for twelve days does not constitute an atypical and significant hardship in relation to the

6    ordinary incidents of prison life – as if that were the basis for Plaintiff's due process claim

7    against Defendant Munoz.  (Doc. 52, Def. Reply, pp. 3:8 - 4:5.)  Also in their reply, Defendants

8    argue that being on management status is not an atypical and significant hardship as the

9    Plaintiff's complaints were primarily the freezing temperature in the cell and deprivation of a

10   mattress.  (*Id*.)

11         Both of these arguments are misleading and erroneous representations of the allegations,

12   factual events, and evidence submitted in this case.  (See the Chronology of Events at pp. 3- 6

13   herein above.)  When an inmate is placed on management status, on the first day, all property is

14   removed from his cell and inventoried and he is issued a pair of boxers, one sheet, and a

15   mattress; on the second day, he is issued a towel and is permitted to shower; on the third day, he

16   is issued a t-shirt; on the fourth day, he is issued a pair of socks; on the fifth day, he is issued a

17   second pair of boxers; on the sixth day, he is issued a sheet; on the seventh day, he is issued a

18   blanket; on the eighth day he is issued one pair of "gong" shoes; on the ninth day, he is issued

19   one jumpsuit; and on the tenth day he is issued his remaining property.  (Doc. 44-2, Def. Exh. B,

20   p. 33.)  Further, while Defendants submit evidence that the temperature of the building in which

21   Plaintiff was placed on management status was thermostatically regulated at 70 degrees, they fail

22   to submit any evidence to show that either there was no exterior door near cell 117, or that the

23   exterior door was not frequently left open so as to allow winter temperatures to flow into the cells

24   adjacent to the door.  Indeed, being placed on management status is an atypical and significant

25   hardship in relation to the ordinary incidents of prison life, which is even more evident when

26   coupled with the drop in temperature that Plaintiff alleges due to the exterior door frequently

27   being left open.  Since Plaintiff had a protected liberty interest in not being placed on

28   management status, he was entitled to procedural due process.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563-71. Confrontation and cross examination are not generally required. *Id.* at 567.

Thus, since Plaintiff had a protected liberty interest in not being placed on management status, he should have been provided the *Wolff* requirements. Defendants did not make any arguments to show what, if any procedural due process was provided to Plaintiff regarding his placement on management status. However, in their exhibits, Defendants submitted the RVR and hearing findings which show that Plaintiff was given a copy of the RVR on December 13, 2006 which was approximately a month before the hearing was conducted on January 12, 2007. (Doc. 44-2, Def. Exh. E, p. 49.) That same exhibit contains the written statement by the fact finder of the evidence that was relied on and the reasons for the disciplinary action, noted that persons whom Plaintiff wanted interviewed were asked questions formulated by Plaintiff, and also noted that Plaintiff did not meet the criteria for assignment of a staff assistant – which shows that the first two *Wolff* requirements were complied with.

However, "[f]or more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must *first* be notified.'" *Wilkinson*, 545 U.S. at 226 (emphasis added) *quoting Fuentes*, 407 U.S. at 80, *citing Baldwin v. Hale*, 1 Wall. 223, 233, 17 L.Ed. 531; *ref Windsor v. McVeigh*, 93 U.S. 274 (1876); *Hovey v. Elliott*, 167 U.S. 409 (1897); *Grannis v. Oredean*, 234 U.S. 385 (1914). The "analysis as to liberty parallels the accepted due process

analysis as to property. The Court has consistently held that some kind of hearing is required at some time *before* a person is finally deprived of his property interests." *Wolf v. McDonnell*, 418 U.S. 539, 557-558 (1974) (emphasis added) *ref. Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168 (1951). "[A] person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. The touchstone of due process is protection of the individual against arbitrary action of government." *Wolf*, 418 U.S. 558 *ref. Dent v. West Virginia,* 129 U.S. 114, 123 (1889). "It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Fuentes*, 407 U.S. at 80, *quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

The primary question in the present case is whether the hearing on Defendant Munoz's 115 RVR (and placement of Plaintiff on management status) was held "at a meaningful time." Defendant Munoz took disciplinary action against Plaintiff by placing him on management status on December 2, 2006 and apparently ended on or about December 12, 2006. The hearing on the RVR was held January 12, 2007, which was roughly a month after the disciplinary action ended. Defendant Munoz did not even issue the RVR on the incident until December 13, 2006 – by which time Plaintiff had already served ten days on management status. Being charged with malfeasance after being disciplined and then holding a disciplinary hearing thereon approximately a month after the Plaintiff has already been subjected to the disciplinary action does not meet the requirement for providing notice and opportunity to be heard at "a meaningful time." Section 3332(f) of Title 15 even states that review of management cell resident status will be conducted daily. In their reply, Defendants argue that Plaintiff does not cite any authority to show that a lapse of forty-two (42) days between a date an inmate is "rehoused" and the date of his disciplinary hearing is unreasonable as a matter of law and that the fact that the temperature in his cell was comfortable and he had received a new mattress well before the hearing showed that the lapse of time for holding the hearing was not unreasonable. (Doc. 52, Def. Reply, 4:13-23.) However, it is Defendants' burden, as the party moving for summary judgment, to show that

1   such lapse in time was reasonable.[2]  Defendants have not met this burden.

2          Further, while Defendants argue that Defendant Munoz followed proper policy and

3   procedure when an inmate is unduly disruptive (based on Plaintiff's thrice refusing to accept a

4   cellmate) by notifying Lt. Williams and placing Plaintiff on management status (Doc. 43, MTD,

5   5:21-7:19; Doc. 44, Def. UF 16; Doc 44-3, Def. Exh.I, 19:10-16), Defendants do not provide any

6   evidence to show the date and/or timing of Defendant Munoz's notification to Lt. Williams

7   relative to placing Plaintiff on management status.  Additionally, one of the three instances

8   Defendants rely on to argue that Plaintiff was unduly disruptive for refusing to accept a cell-mate

9   occurred when Plaintiff was at a different prison.  (Doc. 44, Def. UF 17; Doc. 44-2 Def. Exh. J,

10  pp. 24-28.)  Defendants do not submit any evidence to show that Plaintiff's refusal to accept a

11  cellmate at a prior facility was known to, considered by, or would have been an appropriate basis

12  for Defendant Munoz to place Plaintiff on management status.  These arguments are tangential to

13  the central issue that, while an inmate's disobedience of a direct order, or violation of a prison

14  policy may justify subjecting that inmate to discipline, if such disciplinary action deprives the

15  inmate of a protected liberty interest, it may not be imposed until the inmate has been provided

16  due process.

17         Defendants have not met their burden as the moving party such that they are not entitled

18  to summary judgment on Plaintiff's claims against Defendant Munoz for violating Plaintiff's

19  right to due process.

20  **V.    Retaliation**

21         **A.    Plaintiff's Claim**

22         Plaintiff alleges that Defendant Munoz placed him on management status without prior

23  notice and opportunity to be heard and placed him in a "freezer cell" while on management status

24  out of retaliation for Plaintiff having filed inmate grievances.  (Doc. 1, Compl.)

25  / / /

26  _____

27         [2] Defendants assertion that the legal standard applicable in this case is the framework for evaluating the
    constitutionality of prison procedures as found in *Wilkinson* (Doc. 43, MTD, 5:1-13) is erroneous as Plaintiff is

28  challenging Defendant Munoz's adherence to the proper prison procedures (Doc. 49, Plntf. Opp., 1:14-16 & 3:18-
    23) rather than the constitutionality of the procedures.

1      **B.      Defendant Munoz's Position**

2      Defendants argue that Defendant Munoz is entitled to summary judgment on Plaintiff's

3  claim that he retaliated against Plaintiff for engaging in protected activities because Defendant

4  Munoz placed Plaintiff on management status because Plaintiff refused to accept a cellmate in

5  violation both of the cell compaction policy and Title 15, section 3332(f) (Doc. 43, MTD, 7:20-

6  9:28), and Defendant Munoz's placing Plaintiff on management cell did not chill Plaintiff's

7  exercise of his First Amendment rights (*Id.*, at 10:1-23.).  Plaintiff opposed Defendants' motion

8  by stating that Defendant Munoz placed him on management status without following procedure

9  (which amounted to a violation of Plaintiff's rights to due process as previously discussed) out of

10  retaliation for Plaintiff having filed an inmate grievance against him.  (Doc. 49, Plntf. Opp., 3:18-

11  23.)

12      **C.      Analysis**

13      Allegations of retaliation against a prisoner's First Amendment rights to speech or to

14  petition the government may support a section 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532

15  (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v.*

16  *Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First

17  Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some

18  adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

19  such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

20  not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-

21  68 (9th Cir. 2005).

22      A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus

23  between the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action).

24  *McDonald v. Hall*, 610 F.2d 16, 18 (1st Cir. 1979); *see Mt. Healthy City School Dist. Bd. of*

25  *Educ. v. Doyle*, 429 U.S. 274 (1977).  The prisoner must submit evidence, either direct or

26  circumstantial, to establish a link between the exercise of constitutional rights and the allegedly

27  retaliatory action.  *Pratt*, 65 F.3d at 806.  "[T]iming can properly be considered as circumstantial

28  evidence of retaliatory intent."  *Pratt*, 65 F.3d at 808, *ref, e.g. Soranno's Gasco, Inc. v. Morgan,*

1   874 F.2d 1310, 1316 (9th Cir.1989).  "The *Mt. Healthy* test requires defendants to show, by a

2   preponderance of the evidence, that they would have reached the same decision in the absence of

3   the protected conduct."  *Soranno's Gasco, Inc. v. Morgan,* 874 F.2d 1310, 1315 (9th Cir.1989).

4   The Court must "'afford appropriate deference and flexibility' to prison officials in the

5   evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."

6   *Pratt*, 65 F.3d at 807 (*quoting Sandin v. Conner*, 515 U.S. 472, 482 (1995)).  However,

7   motivation generally presents a jury question, *Allen v. Scribner*, 812 F.2d 426, 436 (9th Cir.

8   1987).

9          Plaintiff alleges that he gave Defendant Munoz an inmate appeal on December 2, 2006,

10  and that within a moments (after a brief conversation), Defendant Munoz had Plaintiff placed on

11  management status in cell 117, which was a "freezer cell."  (Doc. 44-2, Def. Exh. A, Plntf Dep.,

12  25:1-26:5, 28:8-32:17, and 69:10-20; Doc. 49, Plntf. Opp., 3:14-17; Doc. 44, Def. UF  4-8, &

13  10.)

14         Defendants submit that Defendant Munoz's action of placing Plaintiff on management

15  status because of Plaintiff's refusal to accept a cell mate served a legitimate penological

16  justification because Plaintiff refused to accept a cellmate on three occasions which violated the

17  cell compaction policy and constituted unduly disruptive behavior under Title 15, section

18  3332(f).  (Doc. 43, MTD, pp. 7-9.)  While cell compaction due to funding and overcrowding

19  issues is a legitimate penological reason to discipline an inmate for repeatedly refusing to accept

20  a cellmate, Defendants have not shown, nor even addressed how the timing of Defendant

21  Munoz's placing Plaintiff on management status – without prior notice and opportunity to be

22  heard which violated Plaintiff's rights to due process as previously discussed – could have been

23  based on a legitimate penological reason as opposed to retaliatory animus against Plaintiff.

24  Defendants provide no explanation to justify placement of Plaintiff on management status

25  immediately after he and Defendant Munoz discussed Plaintiff accepting a cellmate, as opposed

26  to subsequent to a disciplinary hearing where Plaintiff would receive notice and opportunity to be

27  heard.  In their reply, Defendants cite *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994) and

28  argue that "[e]vidence that the inmate had in fact committed the prohibited conduct for which he

12

had been disciplined will suffice to meet defendants' burden of showing that they would have disciplined the plaintiff even in the absence of the protected conduct." (Doc 52, Def. Reply, 5:13-27.)  However, the evidence in this case also shows that the RVR which Defendant Munoz issued regarding Plaintiff's refusal to accept a cellmate was voided and the disposition should have reflected dismissal in the interest of justice – which does not prove that Plaintiff would have been placed on management status even if Plaintiff had not handed Defendant Munoz an inmate appeal.  (Doc. 49, Plntf. Exh. M, p. 47.)  Further, what Defendants argue is "ample evidence that [Plaintiff ] refused to accept a cellmate" (Doc. 52, Def. Reply, 6:3) are two excerpts from Plaintiff's deposition which are taken out of context and fail to account for the breadth of Plaintiff's deposition testimony regarding that discussion (Doc. 44, Def. UF 2 and 6).

Giving Plaintiff all possible favorable inferences, Defendants have not met their burden to be entitled to summary judgment on Plaintiff's retaliation claim against Defendant Munoz for placing Plaintiff on management status immediately after a conversation discussing Plaintiff's acceptance of a cellmate wherein Plaintiff handed an inmate appeal against Defendant Munoz to Defendant Munoz.

Defendants further argue that Defendant Munoz did not place Plaintiff on management status in cell 117 out of retaliation to expose Plaintiff to extreme cold as the door to cell 117 is a solid steel door and "the temperature in the prison is centrally regulated making the temperature the same in each cell."  (Doc. 43, MTD, 9:1-8; Doc. 44, Def. UF 24 and 25; Doc. 44-3, Def. Exh. O, 48:1-6. Def. Exh. A, p. 16, Plntf. Depo. 55:19-20.)  However, here again, Defendants have parsed Plaintiff's deposition testimony as to the door structure, only identifying Plaintiff's brief answer in deposition, that the door to cell 117 is a solid door, and is not a grate style door, rather than taking into account and addressing Plaintiff's testimony stating that the air from the outside came into the cell via spaces and gaps under the door, around the edge of the door, and through the tray slot.  (Doc. 44-2, Def. Exh. A, p. 16, Plntf. Depo., pp. 53-56.)  Further, Defendants' argument that the temperature is the same in each cell is not supported by their evidence.  While Defendants did submit a declaration of a stationary engineer at SATF, and his declaration does state that the temperature inside the building in question is centrally regulated and is typically set

at 70 degrees in the wintertime (Doc. 44-3, Def. Exh. O, 48, ¶¶ 4-5), they do not establish that the same temperature is maintained within each individual cell, nor do they account for Plaintiff's allegations that cell is located near an exterior door which was frequently left open to allow inclement temperatures to permeate the cells in the near vicinity.

Further, Defendants are not entitled to summary judgment on Plaintiff's retaliation claim against Defendant Munoz merely because Plaintiff filed subsequent grievances and/or legal action.  Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity.  *Pinard v. Clatskanie School Dist.*, 467 F.3d 755, 770 (9th Cir. 2006); *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000); *see also Lewis v. Jacks*, 486 F.3d 1025 (8th Cir. 2007); *see also Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007); *Bennett v. Hendrix*, 423 F.3d 1247, 1250-51 (11th Cir. 2005); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005); *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  It matters not that Plaintiff's exercise of his First Amendment rights was not actually chilled.  It is enough that Defendant Munoz's placement of Plaintiff on management status without prior procedural due process would have chilled a person of ordinary firmness from exercising his First Amendment rights.

Thus, Defendants have not met their burden to be entitled to summary judgment on Plaintiff's retaliation claim against Defendant Munoz for placing Plaintiff on management status in cell 117 and to expose Plaintiff to extremely cold temperatures therein immediately after a conversation discussing Plaintiff's acceptance of a cellmate wherein Plaintiff handed an inmate appeal to Defendant Munoz.

## VI.    Conditions of Confinement

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming from

14

unsafe conditions of confinement, prison officials may be held liable only if they acted with

"deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124,

(9th Cir. 1998) (*citing Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The deliberate indifference

standard involves an objective and a subjective prong. First, the alleged deprivation must be, in

objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834 (*citing Wilson v. Seiter*, 501

U.S. 294, 298 (1991)). Second, the prison official must "know of and disregard an excessive risk

to inmate health or safety." *Id.* at 837. Thus, "a prison official may be held liable under the

Eighth Amendment for denying humane conditions of confinement only if he knows that inmates

face a substantial risk of harm and disregards that risk by failing to take reasonable measures to

abate it." *Farmer*, 511 U.S. at 835. Prison officials may avoid liability by presenting evidence

that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit

unsuccessful, response to the risk. *Id.* at 844-45. Mere negligence on the part of the prison

official is not sufficient to establish liability, but rather, the official's conduct must have been

wanton. *Farmer*, 511 U.S. at 835; *Frost*, 152 F.3d at 1128; *see also Daniels v. Williams*, 474

U.S. 327, 33 (1986).

### 1.   <u>Management Status in Cell 117</u>

The restrictions which are imposed on an inmate on management status which have been

previously detailed, combined with Plaintiff's allegations regarding the cold temperature in cell

117 where Defendant Munoz placed Plaintiff on management status, comprise the basis for

Plaintiff's claim regarding the conditions of his confinement against Defendant Munoz since

Defendant Munoz was responsible for Plaintiff's placement and retention in cell 117 while he

was on management status.

As previously discussed, Defendants' argument that the temperature is centrally regulated

such that every cell in the building is the same temperature is not supported by the evidence

submitted and does not account for Plaintiff's allegation that the cell he was in while on

management status, cell 117, was in close proximity to the exterior door, that the exterior door

was frequently left open in the winter, and that the outside temperatures permeated cell 117 via

gaps and spaces under and around the door and tray slot.

15

1    Thus, Defendants have not met their burden to be entitled to summary judgment on

2    Plaintiff's claims that Defendant Munoz caused Plaintiff to be subjected to unconstitutional

3    conditions of confinement while he was in cell 117 on management status.

4            **2.    Lack of a Mattress**

5            Plaintiff's mattress claims allege that, on December 14, 2006 (which was after Plaintiff

6    was no longer on management status), while Plaintiff was appearing at a hearing on his 114-D

7    lock-up order,[3] Defendant Munoz authorized the removal of his mattress by Defendant Paz,

8    which left nothing for Plaintiff to sleep on except cold steel.  (Doc. 1, Compl.)  Plaintiff alleges

9    that he suffered back pain, an increase in migraine headaches, and stiffness in his neck, and

10   caught a serious cold which required medical treatment.  (*Id.*)

11           Further, on December 25, 2006, Plaintiff asked Defendants Parra and Silva for a mattress,

12   but both refused.  Defendant Parra stated that the denial was authorized by Defendant Munoz

13   because Plaintiff refused to sign a trust account withdrawal slip.

14           Defendants present evidence that Plaintiff's mattress was confiscated on December 14,

15   2006 because it had been destroyed by Plaintiff.  (Doc. 44, Def. UF 11, Exh. F, p. 56.)  This

16   bedding restriction was for ten days starting on December 14, 2006 and ending on December 24,

17   2006. (*Id.*)  Defendants also submitted evidence to show a legitimate justification for removal of

18   the mattress (*Id.* at Def. UF 12; Doc.44-3, Def. Exh. G, p. 3), but do not submit any evidence to

19   show that, after the ten day confiscation, Plaintiff was required to sign a trust withdrawal form

20   before another mattress would be issued to him.  This meets Defendants' burden as to the ten

21   days Plaintiff was without a mattress from December 14, 2006 through December 24, 2006 to

22   shift the burden on this claim to Plaintiff, though it does not address the delay in Plaintiff

23   receiving a mattress until December 26, 2006.

24           In his opposition, Plaintiff argues that if the mattress was removed because he destroyed

25   it, sections 3011 and 3323(g)(1) of Title 15 show that he should have been issued a 115 RVR and

26   should have been charged for the cost of repair or replacement.  (Doc. 49, Plntf. Opp., 4:11-21.)

27

28           [3] An order authorizing placement in administrative segregation.

1    However, the exhibits submitted by Plaintiff do not show that he should have been issued a 115

2    RVR, rather they show that he should have been charged for the cost of repair or replacement and

3    should have suffered a credit loss.  (Doc. 49, Plntf. Exh. G, pp. 39-41.)  Plaintiff received a

4    mattress on December 26, 2006 despite his refusal to complete a trust withdrawal form.  (Doc.

5    44, Def. UF 14.)  Plaintiff argues in his opposition that he was never issued a RVR 115 for

6    destruction of the mattress (Doc. 49, Plntf. Opp., 4:16-21), but does not submit any evidence to

7    address whether he suffered a credit loss.  In their reply, Defendants once again confuse the facts

8    of the case and present arguments as if Plaintiff was without a mattress while he was on

9    management status.  (Doc. 52, Reply, 4:24-5:12.)

10       Based on the evidence submitted in support of and in opposition to this motion it is now

11   clear that Plaintiff was not on management status the twelve days that he was without a mattress.

12   Assuming the very worst scenario, and giving Plaintiff every possible leniency, being deprived of

13   a mattress for twelve days, when not on management status, does not rise to the level of a

14   cognizable claim as temporarily unconstitutional conditions of confinement do not rise to the

15   level of constitutional violations.  *See Anderson v. County of Kern* 45 F.3d 1310 (9th Cir. 1995)

16   and *Hoptowit v. Ray* 682 F.2d 1237 (9th Cir. 1982).

17       Thus, Defendants are entitled to summary judgment on Plaintiff's claims under the Eighth

18   Amendment against Defendants Munoz, Paz, Parra, and Silva for depriving Plaintiff of a

19   mattress for twelve days.

20   **VII.    ORDER**

21       For the reasons set forth herein, the Court finds that Defendants have met their burden as

22   the moving parties and are entitled to summary judgment on Plaintiff's claims under the Eighth

23   Amendment against Defendants Munoz, Paz, Parra, and Silva for depriving Plaintiff of a

24   mattress for twelve days.  However, Defendants have not met their burden and are not entitled to

25   summary judgment on:  Plaintiff's claims under the Eight Amendment against Defendant Munoz

26   for causing Plaintiff to be subjected to unconstitutional conditions of confinement by placing him

27   in cell 117 to serve his time on management status; Plaintiff's retaliation claim against Defendant

28   Munoz for placing Plaintiff on management status in cell 117 so as to expose Plaintiff to

extremely cold temperatures therein immediately after a conversation discussing Plaintiff's acceptance of a cellmate wherein Plaintiff handed an inmate appeal to Defendant Munoz without prior due process; and Plaintiff's claims against Defendant Munoz for violating Plaintiff's right to due process.

Accordingly, it is HEREBY ORDERED that Defendants' motion for summary judgment, filed November 9, 2009, be GRANTED IN PART AND DENIED IN PART as follows:

1. Defendants' motion for summary judgment as to Plaintiff's claims under the Eighth Amendment against Defendants Munoz, Paz, Parra, and Silva for depriving Plaintiff of a mattress for twelve days is GRANTED;

2. Defendants' motion for summary judgment as to Plaintiff's claims under the Eight Amendment against Defendant Munoz for causing Plaintiff to be subjected to unconstitutional conditions of confinement by placing him in cell 117 to serve his time on management status is DENIED;

3. Defendants' motion for summary judgment as to Plaintiff's retaliation claim against Defendant Munoz for placing Plaintiff on management status in cell 117 so as to expose Plaintiff to extremely cold temperatures therein immediately after a conversation discussing Plaintiff's acceptance of a cell-mate wherein Plaintiff handed an inmate appeal to Defendant Munoz without prior due process is DENIED; and

4. Defendants' motion for summary judgment as to Plaintiff's claims against Defendant Munoz for violating Plaintiff's right to due process is DENIED.

IT IS SO ORDERED.

**Dated:   May 25, 2010**                    _____/s/ Sandra M. Snyder_____
                                             UNITED STATES MAGISTRATE JUDGE